UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | Case No: 1:10-CR-151 |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| LEONEL LOPEZ-URQUIZA, | ) | |
| also known as, "Juan Carlo Santiago-Rivera" | ) | |

### MEMORANDUM

Before the Court is Defendant Leonel Lopez-Urquiza's ("Defendant") motion to suppress evidence obtained as a result of his detention and interrogation and as a result of the search of the vehicle Defendant was driving on November 4, 2010 (Court File No. 21). Defendant asserts his Fourth and Fifth Amendment rights were violated. The Court referred the motion and request to United States Magistrate Judge William B. Mitchell Carter pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) (Court File No. 24). Judge Carter held an evidentiary hearing on the matter on February 17, 2011 and February 23, 2011 and issued a Report and Recommendation ("R&R") on the motion (Court File No. 36). Defendant filed timely objections to the R&R (Court File No. 40), and the Government filed a response (Court File No. 41). For the following reasons, the Court will **ACCEPT IN PART** and **ADOPT IN PART** the R&R (Court File No.36). Accordingly, Defendant's motion to suppress will be **DENIED** (Court File No. 21).

### I.   RELEVANT FACTS

Neither the Defendant nor the Government objects to the recitation of facts as provided in the R&R. Accordingly, the Court incorporates those portions of the magistrate judge's recitation of the facts to which objections have not been made, and only recounts the facts underlying the

issues addressed in this Memorandum.

On the morning of November 4, 2010, at approximately 6:00 a.m., Drug Task Force Officer Shane Daugherty ("Officer Daugherty") was monitoring the westbound traffic on Interstate 24 in Grundy County, Tennessee. At that time, he noticed Defendant's vehicle, a silver Nissan Armada displaying a Georgia temporary tag, was traveling faster than the 55 miles per hour ("mph") speed limit. Officer Daugherty turned on his radar, and he clocked the vehicle traveling at 70 mph. As a result, Officer Daugherty initiated a traffic stop of Defendant's vehicle.

Defendant pulled his car over on the left side of the freeway, but Officer Daugherty directed him to move his vehicle to the right side of the freeway. During this encounter, Defendant handed Officer Daugherty a Georgia Driver's License identifying him as Juan Carlo Santiago-Rivera. Defendant then produced a bill of sale for the vehicle; however it showed the vehicle had been purchased by another individual. When asked, Defendant could only provide a first name for the person who allegedly owned the vehicle although this name was different from the one listed on the bill of sale. At the suppression hearing, Officer Daugherty testified he was unsure whether Defendant stated he had known the owner for two weeks or two years.

At some point during their conversation, Defendant indicated he was traveling from Atlanta to Chicago to visit a sick sister. However, the driver's license presented to Officer Daugherty indicated Defendant was from Athens, Georgia. In addition, although there were no passengers in the car with Defendant, he often referred to "we" when discussing his travels to Chicago. As a result, Officer Daugherty recalled a pickup truck traveling in front of Defendant with an Illinois license plate. Also while Officer Daugherty was questioning Defendant, he could see Defendant's carotid artery pulsating, and Defendant seemed anxious and nervous.

Once Officer Daugherty returned to his vehicle, he contacted Officer Chris Smith ("Officer Smith") to assist with the traffic stop. When Officer Smith arrived, he began running computer checks on Defendant through the Blue Lightning Operations Center ("BLOC").

Meanwhile, Officer Daugherty asked Defendant to step outside of his vehicle, and he continued to question Defendant about whether there were drugs, guns, or large sums of money in the vehicle. He also asked for consent to search the vehicle. Defendant gave Officer Daugherty verbal permission to search the vehicle in English. He also signed a consent-to-search form which was written in Spanish. However, Defendant was not advised that he could withdraw his consent at any time. At the time Officer Daugherty started the search, he did not believe Officer Smith had received the results of the BLOC report (Court File No. 34, Tr. at 17:15-20).

When Officer Smith received the results of the BLOC check, there was no indication the vehicle Defendant was driving was stolen and there did not appear to be any problems with Defendant's license. Nonetheless, Officer Daugherty did not inform Defendant he was free to leave, and he did not return Defendant's license to Defendant or issue him a citation for speeding. Rather, Officer Daugherty continued the search.

While searching the exterior of Defendant's vehicle, Officer Daugherty noticed scarred bolts and missing clips around the front fender when he raised the hood of the car. When he pulled back the fender well lining, he could see a hole had been cut in the inner fender and inside that hole was a red plastic wrapped container. Three such packages were found, and the substance found inside of them tested positive for methamphetamine. The magistrate judge noted, however, at the time the drugs were found, the results of the BLOC report had been back for six minutes (Court File No. 36).

Defendant was then placed under arrest and advised of his *Miranda* rights in English. He explained he was being paid $1,500.00 to travel to Chicago. He told the officers that his real name

was Leonel Lopez-Urquiza, and he is a citizen of Mexico.

## II.    STANDARD OF REVIEW

Defendant moves this Court for an order suppressing all evidence obtained as a result of the Defendant's detention, the search of his vehicle, and all statements made during the stop and detention on November 4, 2010.  Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must "make a de novo determination of those portions of the [R&R] to which objection is made" and "may accept, reject, or modify, in whole or in part," the magistrate judge's findings or recommendations.  The Court has "broad discretion" in conducting a *de novo* determination and is not required to rehear any contested testimony.  *United States v. Raddatz*, 447 U.S. 667, 674, 681 (1980).  "Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on the magistrate's proposed findings and recommendations." *Id.* at 676.

## III.   ANALYSIS

### A.     Reasonable Suspicion

Defendant first objects to the R&R on the grounds Officer Daugherty did not have reasonable suspicion to detain Defendant in order to investigate possible drug trafficking (Court File No. 40).  Although Defendant does not argue that there was no legal basis for Officer Daugherty to initiate the traffic stop on the basis Defendant was speeding in its objections to the R&R, Defendant argues Officer Daugherty should not have detained him for other reasons (Court File No. 40).

It is well-settled that an officer may detain a defendant if the officer has probable cause to believe a traffic violation has occurred.  *United States v. Bradshaw,* 102 F.3d 204, 210 (6th Cir. 1996). In addition, the Sixth Circuit "gave the green light to police officers to stop vehicles for any

4

infraction, no matter how slight, even if the officer's real purpose was a hope that narcotics or other contraband would be found as a result of the stop." *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir. 1995). However, once an officer has completed the purpose of the initial traffic stop, "the officer [cannot] further detain the vehicle or its occupants unless something . . . occurred during the traffic stop [that] generated the necessary reasonable suspicion to justify a further detention." *Id.* Indeed, a police officer may briefly detain a person "for investigative purposes if the officer has a reasonable suspicion, supported by articulable facts, that criminal activity has occurred or is about to occur." *United States v. Johnson*, 627 F.3d 578, 583 (6th Cir. 2010) (internal quotations and citations omitted).

Here, the magistrate judge found Officer Daugherty had "sufficient reasonable suspicion to justify a continued inquiry and investigation" on the grounds: (1) Defendant was "driving a Nissan Armada from Atlanta to Chicago"; (2) Defendant "possessed no paperwork tying himself to the vehicle"; (3) the name Defendant gave for the owner of the vehicle did not match the name found on the bill of sale; (4) Defendant made references to "we" when discussing his travels to Chicago, and Officer Daugherty previously observed a second vehicle in front of Defendant with an Illinois tag; and (5) Defendant demonstrated a level of anxiousness Officer Daugherty did not typically associate with a normal traffic stop (Court File No. 36 at 9 - 10).

In considering Defendant's objections to the R&R, the Court finds the following facts to be especially relevant to Officer Daugherty's continued detention of Defendant: (1) there was no paperwork tying Defendant to the vehicle; (2) Defendant gave an incorrect name for the owner of vehicle, and (3) Defendant exhibited an unusual level of anxiousness. *See e.g., Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("Our cases have . . . recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion"); *United States v. Torres-Ramos*, 536 F.3d 542,

552 (6th Cir. 2008) (finding a defendant's inability to provide the last name of the owner of the vehicle coupled with the fact that the vehicle was miles away from the owner's address supports a reasonable suspicion that a vehicle might be unlawfully possessed). *But see United States v. Townsend*, 305 F.3d 537, 543-544 (6th Cir. 2002) (explaining that "a Chicago to Columbus trip [did] not bear the suspicion that the officers [sought] to attach"); *United States v. Wilson*, 506 F.3d 488, 495 (6th Cir. 2007) ("Nervous behavior, standing alone, is not enough to justify a *Terry* search"). As a result, Officer Daugherty could have had a reasonable suspicion as to whether the vehicle was lawfully possessed by Defendant. It is inconsequential that Defendant was later cleared by the BLOC report. Indeed, *Terry v. Ohio*, 392 U.S. 1 (1968), "accepts the risk that officers may stop innocent people," and it "recognized that . . . officers could detain . . .individuals to resolve [any] ambiguity." *See Wardlow*, 528 U.S. at 125-126.

B.     **Length of Detention**

Defendant next argues the extension of Defendant's detention for five or six minutes after the BLOC report came back was unreasonable (Court File No. 40). Indeed, the results of the BLOC report showed the vehicle had not been stolen, and it did not indicate Defendant was unlawfully in possession of the vehicle. Because the Court only finds facts which raised a reasonable suspicion Defendant was not in lawful possession of the vehicle, the Court agrees with Defendant that Officer Daugherty's continued search of the vehicle after the results of the BLOC report were returned had to have been justified on grounds other than reasonable suspicion. *Torres-Ramos*, 536 F.3d at 553 (explaining the officer actions must be "reasonably related in scope to the justification for the continuing detention"). In other words, while the Court finds there existed reasonable suspicion prior to the BLOC report as to whether Defendant was in lawful possession of the vehicle, it does not find reasonable suspicion existed as to whether Defendant possessed illegal contraband.

C.  **Consent to Search**

Nonetheless, the magistrate judge found the continued search was alternatively justified because Defendant had given valid consent to Officer Daugherty to search the vehicle. According to Defendant, this finding was erroneous because the consent was not voluntary (Court File No. 40). It is clear from the evidence Officer Daugherty obtained consent from Defendant to search his vehicle prior to receiving the results of the BLOC report. Defendant first gave oral consent to search the vehicle in English. Then he signed a written consent form which was written in Spanish. However, Defendant argues such consent, if not involuntary from the beginning of the search, became invalid when Officer Daugherty or Officer Smith failed to return Defendant's license or tell Defendant he was free to go once the BLOC report was returned (*id*.).

To determine if consent to a search was "voluntary or was the product of duress or coercion, express or implied," the Court must look at the "totality of the circumstances." *See Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973) (internal quotations omitted). "Among the relevant circumstances to be scrutinized are the defendant's [age], lack of education or low intelligence, the lack of any warnings regarding the accused's constitutional rights, as well as evidence of duress or coercion, such as, deprivation of food or sleep and prolonged detention or questioning." *United States v. Jones*, 846 F.2d 358, 360 (6th Cir. 1988); *but see United States v. Erwin*, 155 F.3d 818, 823 (6th Cir. 1998) (explaining that while "the defendant's knowledge of his right to refuse consent is a factor, [] the government need not prove that the defendant had such knowledge to establish that consent was voluntary"). In addition, "a language barrier is a factor to consider when determining the validity of [consent]." *United States v. Alaouie*, 940 F.2d 663 (Table), No. 90-1970, 1991 WL 144479, at *4 (6th Cir. August 1, 1991). Indeed, courts have distinguished between situations in which searches were obtained during a consensual encounter as opposed to an "unreasonably

prolonged *Terry* detention." *United States v. Tuggle*, No. 10-20042-ML/P, 2010 WL 5856037, at *6 (W.D. Tenn. December 30, 2010). "So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual. . . [and it] will not trigger Fourth Amendment scrutiny unless it loses its consensual nature." *Florida v. Bostick*, 501 U.S. 429, 434 (1991).

Here, at the time Defendant gave oral and written consent to Officer Daugherty to search his vehicle, the investigatory stop had already lasted approximately sixteen to eighteen minutes (Exhibit # 7, Traffic stop time line). *Cf. Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 830 (6th Cir. 2007) (finding that while a three hour detention is likely to coerce an individual into consenting, a twenty-five minute stop is not). Officer Daugherty had already called another officer to the scene, and Defendant was asked to step outside of his vehicle. Officer Daugherty then asked Defendant whether he had any drugs, guns, or currency in the vehicle. At this point, Defendant had not been issued a traffic citation, and his license had not been returned.

However, there is no indication in the record Defendant did not intelligently give consent, and the purposes of the traffic stop had not been completed at that time. *See also United States v. Milligan*, 181 F.3d 105 (Table), No. 96-5330, 96-5439, 1999 WL 313881, at *3-4 (6th Cir. May 3, 1999) (explaining that even though there was little reason to suspect the defendant in that case of criminal activity, because the "officers did not remove [the defendant] from the scene and did not make a show of force," the district court did not err in finding the consent was voluntary.) From the review of the video of the traffic stop, although Defendant clearly had a heavy accent and may have misunderstood some of Officer Daugherty's comments, it seems Defendant understood the majority of the questions asked by Officer Daugherty. In regards to Defendant's consent to search, Defendant not only gave oral consent in English, he also signed a written consent form which was filled out

8

in Spanish.

Nonetheless, Defendant argues the consent at least became involuntary at the point Defendant's detention was unlawfully extended because Defendant was not made aware of his right to leave. Indeed, at some point during Officer Daugherty's search, the results of the BLOC check came back and cleared Defendant. Because the Court finds there was no reasonable suspicion to further detain Defendant, he was free to go at that time. Still consent is not "vitiated merely because the valid suspicion of wrongdoing for which an individual has been stopped proves to be unfounded." *United States v. Erwin*, 155 F.3d 818, 823 (6th Cir. 1998). Although the consent form did not advise Defendant of his right to withdraw consent and Officer Daugherty failed to inform Defendant he could leave, the Supreme Court has held "it would be unrealistic to require police officers to always inform detainees that they are free to go before a consent to search may be deemed voluntary." *Ohio v. Robinette*, 519 U.S. 33, 39-40 (1996). In addition, Defendant had a prior drug conviction (Court File No. 42, Tr. at 5:11-12). Therefore, it is clear "he is no stranger to the police or the criminal justice system." *United States v. Canipe*, 569 F.3d 597, 604 (6th Cir. 2009). Accordingly, the Court finds Defendant's consent was voluntary, and the Court will **DENY** Defendant's motion to suppress evidence obtained from Officer Daugherty's search of the vehicle.

### D. Pre-*Miranda* Questioning

Defendant also objects to the findings in the R&R, stating Officer Daugherty's pre-*Miranda* questioning about matters unrelated to the traffic violation was unlawful under *Miranda*. In other words, Defendant argues Officer Daugherty violated his Fifth Amendment rights by questioning him before he was *Mirandized*. "*Miranda* warnings must be given to all individuals prior to custodial interrogation, whether the offense investigated be a felony or a misdemeanor traffic offense." *Berkemer v. McCarty*, 468 U.S. 420, 425 (1984) (quoting *McCarty v. Herdman*, 716 F.2d 361, 363

9

(1983)). In other words, "[a] suspect subject to custodial interrogation must first be given notice of his or her right against self-incrimination." *United States v. Swanson*, 341 F.3d 524, 527 (6th Cir. 2003). "The test for whether a person is in custody for *Miranda* purposes is not simply whether a reasonable person would have felt free to leave in the circumstances surrounding the interrogation . . . The ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *United States v. Flores*, 193 F. App'x 597, 605 (6th Cir. 2006) (quoting *Swanson*, 341 F.3d at 528).

Here, Defendant argues to the extent Officer Daugherty asked Defendant questions that were unrelated to the traffic stop, such as whether there were drugs in the vehicle, Officer Daugherty should have advised Defendant of his *Miranda* rights. However, Defendant's assertions are unfounded if Defendant was not in fact in "custody." From the record, it appears most of the questions asked by Officer Daugherty were asked prior to the BLOC report being returned. "In *Berkemer*, the Court held that a motorist temporarily detained in a traffic stop does not have the right to a *Miranda* warning even though a 'traffic stop significantly curtails the freedom of action of the driver.'" *Swanson*, 341 F.3d at 530-31 (quoting *Berkemer*, 468 U.S. at 436). Thus, even though Defendant was not free to leave until the time he was cleared through the BLOC report, this is not typically the type of restraint of freedom contemplated by the Fifth Amendment.

It is not clear whether Officer Daugherty continued to ask "incriminating" questions of Defendant after the BLOC report returned. However, the Court finds Defendant was not in custody at that time either. To determine whether Defendant was in custody between the time the BLOC report was returned and Defendant's actual arrest, this Court relies on several factors including "(1) the purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of questioning; and (4) other indicia of custody such as whether the suspect was informed

at the time that questioning was voluntary or that the suspect was free to leave . . .; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police . . . " *United States v. Salvo*, 133 F.3d 943, 950 (6th Cir. 1998).

In this case, "the place of the questioning was not hostile or coercive." *Swanson*, 341 F.3d at 529. Defendant was outside on a public road, and he was not taken to the police station until after his arrest. He was not detained in Officer Daugherty's patrol car. Defendant was not handcuffed or otherwise restrained. *See id.* at 530. In addition, the length of any questioning at this point in time would have been less than six minutes. The only factor that weighs in favor of Defendant is that he was not made aware of the fact that he was free to leave. Still the Court finds there was not a restraint of movement typically associated with a formal arrest.

E. **Effectiveness of *Miranda* Warning**

Next, Defendant objects to the R&R on the grounds his *Miranda* warning provided by Officer Daugherty was not effective. While the consent-to-search form was written in Spanish, the *Miranda* warning was given in English (Court File No. , Tr. at ). "While it is true that 'language difficulties may impair the ability of a person in custody to waive his *Miranda* rights in a free and aware manner,'" there is no indication from the record Defendant did not understand enough of the English language for the *Miranda* warning to be ineffective. *See United States v. Al-Cholan*, 610 F.3d 945, 954 (6th Cir. 2010) (quoting *United States v. Heredia-Fernandez*, 756 F.2s 1412, 1415 (9th Cir. 1985)) (internal brackets omitted). Agent Daugherty testified Defendant did not indicate having any difficulties understanding his rights (Court File No. 39, Tr. at 21:19-20).

F. **Right to Counsel**

Lastly, Defendant objects to the R&R on the basis Officer Daugherty did not honor Defendant's right to counsel. According to Officer Daugherty, after he advised Defendant of his

*Miranda* rights and asked him if he wanted to cooperate, Defendant stated he would "just go to jail and get a lawyer" (Court File No. 39, Tr. at 92: 3-13). Officer Daugherty did not take this to mean Defendant was invoking his right to a lawyer at that moment, but rather Defendant was stating he would get a lawyer later and "do what he could do to minimize the time that he was going to have to serve" (*id.* at 92:9-11).

The Fifth Amendment protects a person from being compelled to incriminate himself. *See e.g., Miranda v. Arizona*, 384 U.S. 436, 467 (1966). As a result, law officers are required to adequately apprise those placed in custody of their rights and must honor a suspect's decision to seek counsel before answering questions. *Id.* If an individual agrees to answer questions without counsel, the officer can question the individual freely. *Davis v. United States*, 512 U.S. 452, 458 (1994). However, if the individual requests counsel, at any time, the officer must cease his or her questioning until the individual's lawyer is present. *Id.* On the other hand, the suspect's statement must be unambiguous or unequivocal from the standpoint of a reasonable officer. *United States v. Suarez*, 263 F.3d 468, 483 (6th Cir. 2001). This Court agrees with the magistrate judge that a reasonable interpretation of Defendant's statement was that he would get counsel once he was in jail. Accordingly, the Court will **DENY** Defendant's motion to suppress any statements made on November 4, 2010.

IV. **CONCLUSION**

For the forgoing reasons, the Court will **ACCEPT IN PART** and **ADOPT IN PART** the R&R (Court File No.36). Defendant's motions to suppress will be **DENIED** (Court File No. 21).

**An Order shall enter.**

/s/
**CURTIS L. COLLIER
CHIEF UNITED STATES DISTRICT JUDGE**