UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | 1:10-CR-151 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| LEONEL LOPEZ-URQUIZA ) | |
| also known as "Juan Carlo Santiago-Rivera" ) | |

## MEMORANDUM

Defendant Leonel Lopez-Urquiza ("Defendant") has filed a second motion to suppress challenging the validity of the November 4, 2010 traffic stop (Court File No. 58).[1] He claims all evidence obtained as a result of the search of Defendant's vehicle must be excluded. In a related motion, Defendant also seeks to exclude the testimony of Lieutenant Shane Daugherty ("Lt. Daugherty") regarding his use of radar equipment during the traffic stop (Court File No. 73). Defendant's motions were referred to United States Magistrate Judge William B. Mitchell Carter, who held a hearing and subsequently filed a report & recommendation ("R&R") recommending Defendant's motions be denied (Court File No. 83). Defendant timely objected (Court File No. 84). For the following reasons, the Court **ACCEPTS** and **ADOPTS** the R&R (Court File No. 83). Accordingly, the Court **DENIES** both Defendant's motion to suppress (Court File No. 58) and Defendant's motion to exclude Lt. Daugherty's testimony regarding the proper use of radar equipment (Court File No. 73).

---

[1] Defendant alleged in his first motion to suppress that his Fourth and Fifth Amendment rights were violated during the November 4, 2010 traffic stop (Court File No. 21). The Court denied Defendant's first motion to suppress (Court File No. 44).

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[2]

On the morning of November 4, 2010, at approximately 6:00 a.m., Lt. Daugherty of the 17th Judicial Drug Task Force initiated a traffic stop on Defendant who was driving a Nissan Armada on Interstate 24 in Grundy County, Tennessee. Lt. Daugherty was parked in his patrol car, a Chevrolet Tahoe, in the median on I-24 at mile marker 130. His vehicle was parked perpendicular to the west bound lane of the interstate, and he was in the 70 miles per hour zone. He was using a KA radar, which was mounted on the dashboard while its antenna was mounted on a stick attached to the rear fender so that it was pointed out the passenger-side rear-bay window.

The oncoming traffic was heading westbound on I-24. The vehicles observed by Lt. Daugherty first descended Monteagle Mountain in a 55 miles per hour zone. Once they reached the bottom, they would ascend a small hill ("the rise"), and then descend the rise in a straight line until they passed mile marker 130. The speed limit remains 55 miles per hour from Monteagle Mountain until 974 feet past the rise; that is, 258 feet before mile marker 130. At this point, the speed limit changes to 70 miles per hour.

Lt. Daugherty testified he could see oncoming westbound traffic on I-24 from where he was parked all the way to the rise. He could not see traffic on the other side of the rise. Lt. Daugherty observed Defendant come over the rise and visually estimated Defendant driving 70 miles per hour. He then locked in Defendant's speed on the radar at 70 miles per hour. Lt. Daugherty testified Defendant was in the 55 miles per hour zone when he clocked Defendant driving 70 miles per hour. He also testified that only Defendant's vehicle was in the radar cone when he detected Defendant's

---

[2] The Court incorporates those portions of the magistrate judge's recitation of the facts to which objections have not been made, and only recounts the facts underlying the issues addressed in this Memorandum.

2

speed. Lt. Daugherty stated that he waited for Defendant's vehicle to pass. He then waited for several other vehicles to pass so he could pull out safely onto the interstate. After Lt. Daugherty entered onto the interstate, he followed Defendant, activated his blue lights, and pulled Defendant over as he reached mile marker 127, approximately 3 miles from the spot where Defendant passed Lt. Daugherty. Lt. Daugherty testified he went over to Defendant's vehicle and stated "do you know the speed limit is 55 coming down the mountain" (Tr. 29). He then asked "how fast were you going?" Defendant responded "65." Lt. Daugherty said "70?" and Defendant responded "yes."

### B.   Procedural Background

Defendant filed his first motion to suppress on January 20, 2011 (Court File No. 21). In the first motion Defendant claimed the November 4, 2010 traffic stop and subsequent search violated his Fourth and Fifth Amendment rights under the United States Constitution. An evidentiary hearing was conducted February 17, 2011 and February 23, 2011. Magistrate Judge Carter filed an R&R recommending Defendant's motion to suppress be denied (Court File No. 36). This Court accepted and adopted in part the R&R and denied Defendant's first motion to suppress (Court File No. 44).

Defendant subsequently filed a second motion to suppress (Court File No. 58) and a motion to exclude Lt. Daugherty's testimony regarding the proper use of radar equipment (Court File No. 73), both of which are the subject of the instant Memorandum and Order. Defendant sought to reopen the suppression hearing to challenge the validity of the traffic stop. Defendant claimed it was not until the first suppression hearing that he learned Lt. Daugherty's vehicle was parked in the 70 miles per hour zone when he detected Defendant speeding. Moreover, after the first hearing, Defendant learned of the recent decision *United States v. Gerardo Ruiz and Luis Alberto Ruiz*, Case No. 3:10-cr-00254, 2011 WL 2197651 (M.D. Tenn. June 6, 2011). In *Ruiz*, a case unrelated to the

3

instant matter, a district court in the Middle District of Tennessee determined Lt. Daugherty's account of a traffic stop was not credible in light of other evidence before the court.

The magistrate judge held a second evidentiary hearing on March 7, 2012. At the hearing, Lt. Daugherty testified again as well as Timothy Lane, the director of the 17th Judicial Drug Task Force, and Charles Bryan Farmer, Defendant's expert witness on the proper use of radar equipment. On May 15, 2012, the magistrate judge filed an R&R recommending Defendant's second motion to suppress be denied (Court File No. 58) and Defendant's motion to exclude Lt. Daugherty's testimony regarding the proper use of a radar detector be denied (Court File No. 73). Defendant filed a timely objection to the magistrate judge's R&R on May 26, 2012 (Court File No. 84).

## II. STANDARD OF REVIEW

The Court must conduct a *de novo* review of those portions of the R&R to which objection is made. 28 U.S.C. § 636(b)(1)(C). But *de novo* review does not require the district court rehear witnesses whose testimony has been evaluated by the magistrate judge. *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980). The magistrate judge, as the factfinder, had the opportunity to observe and hear the witnesses and assess their demeanor, putting him in the best position to determine credibility. *Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002); *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999). The magistrate judge's assessment of witnesses' testimony is therefore entitled to deference. *United States v. Irorere*, 69 F. App'x 231, 236 (6th Cir. 2003).

## III. DISCUSSION

Defendant raises several objections to the magistrate judge's R&R. First, Defendant claims

4

Lt. Daugherty is not qualified to testify regarding the proper use of radar equipment. Defendant also contends Lt. Daugherty lacked probable cause when he conducted the traffic stop on Defendant on November 4, 2010. Finally, Defendant challenges Lt. Daugherty's credibility. The Court will address Defendant's objections below.

### A. Lt. Daugherty's Qualifications

The Court will first address Defendant's argument that Lt. Daugherty is not qualified to testify as an expert on the proper use of a radar detector. In a recent opinion, the United States Court of Appeals for the Sixth Circuit explained that the Federal Rules of Evidence are inapplicable to the admissibility of evidence during a suppression hearing. *United States v. Stepp*, 680 F.3d 651, 668 (6th Cir. 2012) (citing *United States v. Matlock*, 415 U.S. 164, 172-73 (1974)). A court's determinations at a suppression hearing must nonetheless be "supported by competent and credible evidence." *Id.* (quoting *Fields v. Bagley*, 275 F.3d 478, 485 n.5 (6th Cir.2001)). The court must also "consider any proffered expert's qualifications and determine, in its discretion, what weight to afford that expert's testimony." *Id.* (citing *United States v. Diaz*, 25 F.3d 392, 394 (6th Cir.1994)). Here, the magistrate judge gave the parties an opportunity to question Lt. Daugherty about his qualifications, and Lt. Daugherty was then allowed to testify. Afterwards, in the R&R, the magistrate judge explained that Lt. Daugherty's qualifications satisfied the minimum requirements for him to testify as an expert on the use of radar equipment, even under Fed. R. Evid. 702.[3]

The Court agrees with the magistrate judge's conclusion that Lt. Daugherty was qualified to testify as an expert on the proper use of radar equipment. Lt. Daugherty testified he is presently

---

[3] Although the magistrate judge did not have to consider Rule 702 in making this determination, this further demonstrates the extent to which the court found Lt. Daugherty qualified.

5

employed by the 17th Judicial Drug Task Force and works in criminal interdiction (Court File No. 82 ("Tr."), at 7). He initially worked as a police officer for the Oneida Police Department in 1996. He then began working for the 17th Judicial Drug Task Force, for which he worked from 1996 to 2002. Between 2002 and 2010, Lt. Daugherty gained experience working as a detective with the Lewisburg Police Department in Lewisburg, Tennessee and then as an interdiction officer and K-9 handler with the 21st Judicial Drug Task Force (Tr. 7-8). He returned to the 17th Judicial Drug Task Force in 2010 where he is now employed. Lt. Daugherty testified that he was certified in 1996 to use radar equipment while working with the Oneida Police Department (Tr. 8-9).[4] His training consisted of six to eight hours of classroom instruction. In order to pass the final test, Lt. Daugherty had to visually estimate the speed of vehicles within three miles an hour of the speed locked on the radar.

One of Defendant's specific concerns is that Lt. Daugherty lacked proper certification. Defendant argues Lt. Daugherty was not trained to use the KA band radar, which was the type of radar used at the time of Defendant's arrest. Lt. Daugherty readily admits he was certified in 1996 on the "X-band" radar, and has not since been recertified or certified on the KA band radar (Tr. 10).[5] This does not greatly diminish Lt. Daugherty's qualifications for several reasons.[6] First, as explained

---

[4] The magistrate judge acknowledged that--although the Government could not offer a certificate of Lt. Daugherty's radar certification--the court had no reason to discount the testimony of Lt. Daugherty or his director Timothy Lane who both testified to Lt. Daugherty's certification based on personal knowledge.

[5] Although Defendant refers to the radar generally as "X-Band," it appears he was trained on the XK radar.

[6] As an aside, the Court notes Defendant's expert witness on the use of radar equipment, Mr. Farmer, had no prior experience with the specific equipment used by Lt. Daugherty in this case. Yet the magistrate judge allowed him to testify based on his experience with other similar radar equipment.

6

in the R&R, "X-band" refers to the type of antenna on the radar equipment and there are two types of X-band radar, XK and KA. The primary difference between the XK radar and the KA radar is the width of the signal that each band emits; the same general usage principles, however, apply to both (Tr. 10-11). Second, at the time of the incident, Lt. Daugherty was in compliance with the relevant requirements. Defendant cites to Tenn. Code Ann. § 24-7-124 for the rule that

> [i]n any judicial or administrative proceeding in which the results of a radar, laser or similar device used to measure the speed of a motor vehicle are being introduced for the purpose of proving the speed of the motor vehicle or the conduct of the driver of the vehicle, such results shall not be admissible for such purposes unless the law enforcement officer operating the device has been trained pursuant to the guidelines established by the National Highway Traffic Safety Administration or the Tennessee peace officer standards and training (POST) commission.

Tenn. Code Ann. § 24-7-124. Yet, as attested to by both Lt. Daugherty and director Timothy Lane, Lt. Daugherty was POST certified and had been since 1996. Moreover, § 1110-03-.09 of the Rules of the Tennessee POST Commission, which impose additional requirements on law enforcement officers to receive training on speed measurement devices, did not go into effect until June 9, 2011, months after the November 4, 2010 incident involving Defendant.

If any issue was to cause concern for the Court, it would be the length of time that has passed since Lt. Daugherty received initial training on radar equipment. However, the fact that Lt. Daugherty has had numerous opportunities to build upon his initial training through firsthand experience allays most of the Court's concerns, as it did for the magistrate judge. Lt. Daugherty testified that he has approximately seven or eight years experience using the KA band radar and has used it consistently over the last four and one half years (Tr. 12-13). He also claims he uses it at least two days a week, though some weeks as many as three or four times (Tr. 12).

Viewing the record as a whole, the Court agrees with the magistrate judge that Lt. Daugherty

7

was sufficiently qualified to testify at the suppression hearing as an expert on the proper use of radar equipment, especially given that the Federal Rules of Evidence are inapplicable.

   B.   **Probable Cause**

Next, the Court must determine whether Lt. Daugherty had probable cause to conduct the November 4, 2010 traffic stop on Defendant. It is well established that "the constitutional reasonableness of traffic stops [does not] depend[ ] on the actual motivations of the individual officers involved." *Whren v. United States*, 517 U.S. 806, 813 (1996). "[S]o long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment." *United States v. Bradshaw*, 102 F.3d 204, 210 (6th Cir. 1996) (citing *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir.1993)). Probable cause exists if "the facts and circumstances within [the officer's] knowledge and of which [the officer] had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *See United States v. Davis*, 430 F.3d 345, 352 (6th Cir. 2005) (quoting *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949)). The burden of proof on the Government at a suppression hearing is preponderance of the evidence. *See United States v. Bradley*, 163 F. App'x 353, 357 (6th Cir. 2005) (citation omitted) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence."); *see also United States v. Torres-Ramos*, 536 F.3d 542, 552 (6th Cir. 2003) (noting the Government bore the burden of proving by a preponderance of the evidence that there was reasonable suspicion the defendants were involved in criminal activity).

The magistrate judge concluded Lt. Daugherty had probable cause to conduct a traffic stop on Defendant for traveling 70 miles per hour in a 55 miles per hour zone. Defendant, however,

8

contends Lt. Daugherty lacked probable cause for several reasons. First, Defendant claims Lt. Daugherty did not properly use the radar equipment and, therefore, cannot establish Defendant was speeding. In support of this argument, Defendant argues Lt. Daugherty's vehicle was not positioned properly for speed detection because it was parked perpendicular to the interstate. Defendant's expert witness Charles Farmer testified based on his training and experience as a former Tennessee highway patrolman that an officer in a vehicle "shooting radar" should be positioned parallel to the traffic (Tr. 105).[7] When parked parallel, Mr. Farmer testified that the officer can see both the traffic and the radar unit at the same time (*id.*). In contrast, when parked perpendicular, the officer would have to keep turning his head back and forth. As noted by the magistrate judge, however, even if Mr. Farmer's explanation is true, it does not establish in any way that Lt. Daugherty's use of the radar while parked perpendicular would lead to inaccurate results.[8]

Mr. Farmer also testified that Lt. Daugherty's decision to shoot radar out of a side window was improper (Tr. 106-08). However, Mr. Farmer admits he has never personally used a radar out of a side window. Moreover, although he testifies positioning the radar antenna in this manner can result in interference from the window, he also testifies that any window can lead to interference (Tr. 106). He does not assert shooting radar out the side window results in worse interference than doing

---

[7] Notably, Mr. Farmer retired from the highway patrol in May 2004 (Tr. 100). Mr. Farmer admits he does not know if the highway patrol still follows these same procedures regarding the proper usage of radar equipment (Tr. 113). He also admits he has not used radar since he retired (Tr. 116).

[8] Defendant also points to the fact that the Government offered a demonstrative video showing how Lt. Daugherty would have used the radar equipment on November 4, 2010. In the video, the law enforcement vehicle was parked parallel to the highway. However, as explained by Lt. Daugherty at the hearing, the Government used a different vehicle in the video and the radar was mounted in a different position, requiring that the vehicle be parked facing a different direction (Tr. 51).

9

so from any other window. Taking all of this into account, the Court agrees with the magistrate judge's conclusion that Mr. Farmer "failed to offer a solid technical reason why the radar would not work properly if the patrol car were parked perpendicular to the interstate" (Court File No. 83). Although the Court has no reason to doubt the benefits of parking parallel to the highway when using radar equipment, Defendant has not shown Lt. Daugherty's positioning had a detrimental effect on his ability to detect Defendant's speed.

Second, Defendant contends other vehicles were in the radar's "cone." He argues that the existence of other cars in the cone would have prevented Lt. Daugherty from determining Defendant was speeding. At the hearing, Mr. Farmer testified it was unreasonable to believe no other traffic was in the radar cone at the time Lt. Daugherty was using the radar (Tr. 109). Mr. Farmer reached this opinion based on Lt. Daugherty's testimony at the first suppression hearing, the video of the traffic stop, and Lt. Daugherty's case narrative in which he states he had to wait until it was safe to pull out into the traffic to initiate the traffic stop.[9] As noted by the magistrate judge, however, Mr.

---

[9] Among other things, Defendant's brief highlights the following statement from Lt. Daugherty's case narrative:

> I was . . . monitoring westbound traffic when I observed a vehicle traveling in the left lane that appeared to be traveling faster than the flow of traffic. . . . As the vehicle passed I noticed that it was a silver Nissan Armada that had a temporary license plate. When it was safe I pulled out into the flow of traffic in an attempt to initiate a traffic stop on the vehicle.

(Court File No. 84-1). Defendant also highlights the following testimony offered by Lt. Daugherty at the first suppression hearing discussing the aforementioned events:

> [I] was monitoring traffic that was traveling westbound on I-24 when I noticed a vehicle came into my view that was traveling in the fast lane, appeared to be traveling faster than the other vehicles in front if it. . . . The vehicle passed my location, still traveling in the fast lane. After it passed my location, applied its brakes and moved over into the slow lane behind a tractor trailer. As other vehicles passed,

10

Farmer's testimony does not establish that "there *must* have been more than one car in the radar's 'cone' when Lt. Daugherty 'locked' the radar onto defendant's car" (Court File No. 83 at 16). The magistrate judge offers several possible explanations that reveal congruence between Lt. Daugherty's testimony about the presence of traffic and his testimony that only Defendant's vehicle was in the radar cone. For example, even Mr. Farmer admitted that as a Tennessee highway patrolman, he did not always pull out immediately onto the interstate to initiate a traffic stop for safety reasons. Both Lt. Daugherty and Mr. Farmer explained it is difficult to determine which lane oncoming traffic may be in, especially if it is nighttime. Moreover, even taking into account Mr. Farmer's other testimony, Lt. Daugherty could have locked Defendant's speed on the radar as Defendant's Armada was coming over the rise, and any vehicles behind him--that is, those that had not yet crested over the rise--would have been outside the radar cone. Those same vehicles, however, would have been close enough by the time Lt. Daugherty determined he needed to pull out to follow Defendant that he would have waited to let them pass in the interest of safety. Taking all of this into account, the Court concludes Lt. Daugherty's testimony regarding the presence of other vehicles on the interstate does not conflict with his testimony that Defendant was the only vehicle in the radar cone.[10]

Lastly, the Court agrees with the magistrate judge that other facts support a determination that Lt. Daugherty had probable cause to stop Defendant for speeding. For instance, Lt. Daugherty

---

I pulled out in the flow of traffic once it was clear, and caught up to the vehicle . . . ."

(Court File No. 39 at 5-6).

[10] It is worth noting that, even if there had been an additional car in the radar cone, Lt. Daugherty testified the radar had the capacity to distinguish between the vehicles (Tr. 14-15).

11

testified he visually estimated Defendant driving 70 miles per hour, which was confirmed by the radar. Even Mr. Farmer testified that a trained radar person could tell if a person was speeding just by looking at the vehicle (even at night) and that the radar merely confirms what was visually observed (Tr. 138). Another factor supporting the conclusion that Lt. Daugherty had probable cause is the Government's submission that Defendant admitted to speeding. Even taking into account Defendant's English language deficiencies--an issue raised by Defendant--Defendant's admission that he was going "70" is relevant, especially given that Lt. Daugherty specifically inquired whether Defendant realized the speed limit was 55 "coming down the mountain." Accordingly, the Court concludes the Government established by a preponderance of the evidence that Defendant was speeding.

### C. Lt. Daugherty's Credibility

Finally, with respect to both motions, Defendant contends Lt. Daugherty's testimony lacked credibility. Defendant first claims Lt. Daugherty and his supervisor were biased. He argues that since Lt. Daugherty was tasked with drug interdiction, he did not care if the people he stopped actually committed a traffic violation (Court File No. 84). In other words, Defendant claims Lt. Daugherty's stop was pretextual and Lt. Daugherty targeted individuals under the guise of conducting "traffic stops" when his true purpose was locating drugs. Lt. Daugherty's true motivation for stopping Defendant is irrelevant, however, because he had probable cause to conduct the traffic stop. *See United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999). Moreover, Defendant has failed to show Lt. Daugherty should be considered any less credible for his statements regarding the proper use of radar equipment merely because his job responsibilities include drug interdiction and not just traffic enforcement.

Defendant also attacks Lt. Daugherty's credibility because he claims Lt. Daugherty's testimony was inconsistent. Defendant contends Lt. Daugherty failed to disclose in the first suppression hearing that his vehicle was in the 70 miles per hour zone when he clocked Defendant driving 70 miles per hour in the 55 miles per hour zone. However, when asked directly later in the proceeding, Defendant immediately acknowledged the location of his vehicle in the 70 miles per hour zone, even drawing an illustration.[11] Defendant also claims Lt. Daugherty's testimony regarding whether there was traffic in the radar "cone" was inconsistent. However, the magistrate judge specifically noted that he found Lt. Daugherty's testimony that there were no vehicles in the radar cone "fully compatible" with his testimony that he had to wait for cars to pass before pulling out onto the interstate to stop Defendant (Court File No. 83 at 17). For reasons explained earlier in this Memorandum, the Court agrees with the magistrate judge's conclusion.

Finally, the Court is aware that Lt. Daugherty's testimony was found to be not credible by another federal district court last year. In *United States v. Ruiz*, Case No. 3:10-cr-00254, 2011 WL 2197651 (M.D. Tenn. June 6, 2011), a district court determined Lt. Daugherty's credibility suffered on account of three issues: (1) his narrative differed from his testimony at the evidentiary hearing, (2) the officer in the patrol car with Lt. Daugherty refused to corroborate his testimony, and (3) his demeanor, in that Lt. Daugherty "appeared emotional and nervous at times and admitted to suffering 'sleepless nights' in anticipation of the hearing." *Id.* at *7-8. Because the only evidence in the record was Lt. Daugherty's testimony, which the court found not credible, the court determined it could not

---

[11] The Court also notes the Government sufficiently established that Lt. Daugherty would have been able to detect Defendant's speed using the radar from the location where he was parked. A demonstrative video and testimony was offered at the hearing to show Lt. Daugherty would have been able to detect Defendant's vehicle speeding once it came over the rise in the 55 miles per hour zone even though Lt. Daugherty was parked in the 70 miles per hour zone.

13

establish by a preponderance of the evidence that the defendant was speeding. *Id.* at *10. While the Court takes seriously the credibility assessment made by a sister court, here there are sufficient grounds to find Lt. Daugherty is a credible witness. Unlike in *Ruiz*, there is sufficient evidence in the record to support Lt. Daugherty's account of the traffic stop on November 4, 2010 involving Defendant. Moreover, the magistrate judge's credibility determinations in this case warrant deference, especially here where the magistrate judge had the opportunity to hear testimony from Lt. Daugherty in not just one but two suppression hearings in this case. In the R&R, the magistrate judge found Lt. Daugherty to be particularly credible noting "I did not find Lt. Daugherty's testimony to be inconsistent internally or with the other evidence presented in the case, and I observed his demeanor which was serious but relaxed. I conclude he was being truthful" (Court File No. 83 at 19).[12] Seeing no reason to depart from the magistrate judge's credibility determination based on the facts and proceedings in this case, the Court affirms the magistrate judge's assessment of Lt. Daugherty's credibility.

## IV. CONCLUSION

In sum, the Court **ACCEPTS** and **ADOPTS** the magistrate judge's R&R (Court File No. 83). The Court **DENIES** Defendant's motion to suppress (Court File No. 58). The Court also **DENIES** Defendant's motion to exclude Lt. Daugherty's testimony regarding the proper use of radar equipment (Court File No. 73).

---

[12] At the second suppression hearing, the magistrate judge expressly acknowledged the *Ruiz* decision and noted "Mr. Daugherty has been the subject of at least one court case where there was an opinion that related to the facts of that case, this case sits on its own feet. And I will say that I have heard the testimony of Officer Daugherty in two hearings now and I find him to be a credible witness" (Tr. 151).

14

An Order shall enter.

                                        **/s/**
                                        **CURTIS L. COLLIER**
                                        **CHIEF UNITED STATES DISTRICT JUDGE**